# 22-7105

# United States Court of Appeals
## for the
## Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

EDWIN LEO BROWN,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT WILMINGTON

# OPENING BRIEF OF APPELLANT

Anton Metlitsky
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
(212) 326-2000

David K. Roberts
Ashley Robertson
Joshua Revesz
Daniel Lautzenheiser
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300

*Counsel for Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (JOB 331446)

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

STATEMENT OF JURISDICTION ........................................................ 3

STATEMENT OF THE ISSUE ................................................................ 3

STATEMENT OF THE CASE ................................................................. 4

    A.    The Plea Negotiations ................................................................ 4

    B.    Arraignment and Sentencing ................................................. 6

    C.    Post-Conviction Proceedings ................................................. 9

    D.    The Decision Below ................................................................ 11

STANDARD OF REVIEW ..................................................................... 13

SUMMARY OF ARGUMENT ............................................................... 14

ARGUMENT ............................................................................................ 18

I.    Brown established a reasonable probability that he suffered prejudice from his counsel's concededly deficient performance. ... 19

    A.    Defendants ordinarily suffer prejudice when they plead guilty to more serious charges based on counsel's erroneous advice. ............................................................... 20

    B.    Brown easily demonstrated prejudice under the proper standard. ...................................................................... 23

II.    The district court's contrary conclusion is incorrect. ..................... 27

    A.    The district court erred in requiring "contemporaneous evidence" beyond Brown's guilty plea to more serious charges. ............................................................... 28

        1.    *Lee v. United States* does not warrant a different result. ....................................................................... 30

        2.    The courts of appeals have rejected the district court's flawed understanding of *Lee*. ...................................... 33

    B.    The district court further erred in drawing legally improper inferences from the record. .................................... 35

1. There is no evidence that, had he been properly advised, Brown would have prioritized preserving his appellate rights. .........................................................37

2. The Rule 11 hearing supports—rather than undermines—Brown's testimony. ...............................43

3. Brown's approach to direct appeal does not undermine his case. ...................................................................47

III. This Court should remand to the district court with instructions to order the Government to reoffer the previous plea offer...............50

CONCLUSION ...................................................................................52

STATEMENT REGARDING ORAL ARGUMENT.................................53

**TABLE OF AUTHORITIES**

**Cases**

*Anaya v. Lumpkin,*
976 F.3d 545 (5th Cir. 2020) ...................................................................33

*Byrd v. Skipper,*
940 F.3d 248 (6th Cir. 2019) ......................................................22, 38, 43

*Dodson v. Ballard,*
800 F. App'x 171 (4th Cir. 2020) .....................................21, 22, 24, 50

*Glover v. United States,*
531 U.S. 198 (2001) ...................................................................................51

*Lafler v. Cooper,*
566 U.S. 156 (2012) ....................................................................32, 50, 51

*Lee v. United States,*
582 U.S. 357 (2017) ............................................................................*passim*

*Magana v. Hofbauer,*
263 F.3d 542 (6th Cir. 2001) ..........................................................23, 29

*Merzbacher v. Shearin,*
706 F.3d 356 (4th Cir. 2013) ....................................................20, 28, 29

*Missouri v. Frye,*
566 U.S. 134 (2012) ............................................................................*passim*

*Morris v. Slappy,*
461 U.S. 1 (1983) .......................................................................................45

*Sims v. United States,*
85 F. App'x 632 (11th Cir. 2019) ..........................................................24

*Strickland v. Washington,*
466 U.S. 668 (1984) ............................................................................13, 49

*United States v. Akande,*
956 F.3d 257 (4th Cir. 2020) ....................................................1, 28, 45

*United States v. Baptiste,*
596 F.3d 214 (4th Cir. 2010) ...................................................................47

*United States v. Chavez,*
902 F.2d 259 (4th Cir. 1990) ...................................................................45

*United States v. Dominguez Benitez,*
542 U.S. 74 (2004) ...................................................................14

*United States v. Gordon,*
156 F.3d 376 (2d Cir. 1998)......................................................23

*United States v. Kearn,*
90 F.4th 1301 (10th Cir. 2024)...............................21, 23, 34, 38

*United States v. Kim,*
71 F.4th 155 (4th Cir. 2023)......................................................14

*United States v. King,*
119 F.3d 290 (4th Cir. 1997) ....................................................47

*United States v. Knight,*
981 F.3d 1095 (D.C. Cir. 2020) .......................................*passim*

*United States v. Lockhart,*
947 F.3d 187 (4th Cir. 2020) ....................................................14

*United States v. MacDonald,*
911 F.3d 723 (4th Cir. 2018) ....................................................14

*United States v. Mayhew,*
995 F.3d 171 (4th Cir. 2021) ......................................19, 20, 43

*United States v. Morrison,*
449 U.S. 361 (1981) ..................................................................50

*United States v. Murillo,*
927 F.3d 808 (4th Cir. 2019) ....................................................46

*United States v. Ragin,*
820 F.3d 609 (4th Cir. 2016) ..............................................14, 36

*United States v. Swaby,*
855 F.3d 233 (4th Cir. 2017) ....................................................29

*United States v. Tucker,*
603 F.3d 260 (4th Cir. 2010) ....................................................14

*United States v. Vaulin,*
132 F.3d 898 (3d Cir. 1997)......................................................29

*United States v. Williams,*
977 F.2d 866 (4th Cir.1992) .....................................................47

*Walters v. Martin,*
    18 F.4th 434 (4th Cir. 2021)...............................................................35

*Whitehouse v. U.S. Dist. Ct. for Dist. of Rhode Island,*
    53 F.3d 1349 (1st Cir. 1995)..............................................................45

**Statutes**

18 U.S.C. § 3624..................................................................................51

18 U.S.C. § 3632..................................................................................51

28 U.S.C. § 2255.........................................................................3, 9, 47

# INTRODUCTION

The legitimacy of guilty pleas "in our criminal justice system depends on a defendant's ability to understand the consequences of a guilty plea" and therefore "make an informed decision about whether to enter one." *United States v. Akande*, 956 F.3d 257, 262-65 (4th Cir. 2020). In this case, "[p]lea counsel's inaccurate advice deprived" Petitioner-Appellant Edwin Brown of that ability, and in doing so, denied him "the Sixth Amendment right to effective assistance of counsel." *Id.*

In 2016, Brown faced five counts related to his distribution of 1.63 grams of crack cocaine, and he decided to plead guilty. JA120. The Government offered him a deal: plead guilty to a single count, and face at most 10 years in prison. JA581. But based on advice from counsel, Brown believed that the offer was no deal at all—that, no matter whether he pleaded guilty with or without the deal, the maximum time he faced in prison was 10 years. JA582. So Brown pleaded guilty without accepting the government's deal. With all else equal, Brown hoped that, by accepting responsibility for all five counts, the judge might be more "lenient." JA582.

But it turned out that Brown's counsel had made an egregious "mistake." JA579. By pleading guilty to all five counts, Brown actually faced a maximum sentence of *90 years*, not 10. *See* JA480. And the district court sentenced him to 17.5 years in prison—7.5 years more than he could have received under the plea deal. JA580. As a result, Brown remains incarcerated even though—had his counsel correctly advised him—he would now be done with, or at least nearing the end of, his time in prison.

Counsel's ineffective assistance denied Brown his Sixth Amendment rights. The Supreme Court has long held that a defendant establishes ineffective assistance of counsel where (1) "counsel's performance was deficient" and (2) there is a "reasonable probability" that the deficiency prejudiced the defense. *Missouri v. Frye*, 566 U.S. 134, 139, 147 (2012). In this case, the district court held—and the Government has conceded—that Brown's counsel performed deficiently, as he "failed to properly advise Brown regarding his sentencing exposure during plea negotiations." JA597.

The only question before this Court is whether Brown has established a "reasonable probability" that he was prejudiced by that

2

deficient performance.  *Frye*, 566 U.S. at 147.  The answer is yes.  But for counsel's advice, there is a reasonable probability—indeed, a near certainty—that Brown would have accepted the plea deal to a maximum of 10 years, rather than plead with no agreement to counts carrying a maximum of 90 years.  Because the district court's contrary conclusion rests on fundamental legal errors, Brown respectfully requests that the Court vacate and remand so that he may plead to the original deal.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this action under 28 U.S.C. § 2255.  On September 21, 2022, the district court dismissed Brown's § 2255 motion, entered a judgment in favor of the respondent, and denied a certificate of appealability.  JA602.

Brown filed a timely notice of appeal on September 21, 2022. JA603.  On April 29, 2024, the Court issued an order granting a certificate of appealability and appointing the undersigned counsel to argue on Brown's behalf.  JA605.  Thus, this Court has jurisdiction under 28 U.S.C. § 2255(d).

## STATEMENT OF THE ISSUE

This Court granted a certificate of appealability as to "[w]hether [Brown] demonstrated a reasonable probability that, but for plea

3

counsel's erroneous advice regarding sentencing exposure, [Brown] would have accepted the Government's plea offer." ECF No. 13 (Apr. 29, 2024).

## STATEMENT OF THE CASE

This case centers on a plea deal that Brown rejected after his attorney provided erroneous advice as to his sentencing exposure. In the decision below, the Government conceded, and the district court agreed, that Brown's counsel had performed deficiently. JA597. But the court held that Brown suffered no prejudice, as it believed there was not a "reasonable probability" that Brown would have accepted the plea deal even if properly advised. JA597.

### A. The Plea Negotiations

In October 2016, Brown was indicted on four counts of possession with the intent to distribute cocaine base and a fifth count for being a felon in possession of a firearm. JA580. The Government had video evidence of Brown selling cocaine base totaling 1.63 grams to a confidential informant on four different occasions and also discovered a firearm upon arrest. JA120.

Frank Harper was appointed as Brown's attorney in November 2016, but their attorney-client relationship quickly deteriorated. JA583-

4

584. From the outset, Brown was clear with Harper that—in light of the overwhelming evidence against him—he did not want to go to trial, preferring instead to plead guilty, and he therefore instructed Harper to negotiate the best plea deal possible. JA581. Harper eventually procured an offer that would have required Brown to plead guilty only to the gun charge for a maximum of 10 years. JA583-584. But as "happen[s] regularly" with criminal defendants, Brown was "skeptical about the first set of pleas" presented to him. JA525. Despite Harper's insistence, Brown did not believe that 10 years was the best plea deal available. JA477; JA581. At Brown's request, Harper therefore withdrew as counsel. JA477.

Brett Wentz then became Brown's attorney, and once more, Brown informed counsel that he wanted to plead guilty. JA582. Brown and Wentz discussed the most recent plea agreement that Harper had procured for Brown, and Wentz affirmed that Brown would face a maximum of 10 years in prison if he accepted the plea offer. *See* JA582.

But Wentz also made a crucial error: When Brown asked Wentz what would happen if he pleaded guilty to all five counts without an agreement, Wentz told him "that for sentencing purposes, it did not

matter whether he accepted the plea agreement."  JA184 ¶ 5; *see also* JA243-45.  As Wentz and the Government later conceded, that advice was flat-out wrong. JA546; JA586.  In fact, pleading without a deal would result in a statutory maximum of *90* years in prison—up to 20 years on each of the four drug charges and up to 10 years on the felon-in-possession charge—rather than the 10 years offered in the deal.  As Wentz put it, Brown left their conversation believing "that it did not matter whether he plead[ed] guilty under the plea agreement versus the open plea with regard to the statutory max"—even though, in fact, the maximums differed by 80 years.  JA546.

## B.    Arraignment and Sentencing

Based on what the Government now concedes was Wentz's deficient performance, Brown failed to appreciate the benefits of the plea offer before him.  He therefore rejected the plea deal shortly before his Rule 11 hearing, JA547, and elected instead "to plead to all five counts and … throw[] [him]self on the mercy of the Court hoping to get a better situation," JA582.  Brown "believed that by accepting responsibility for all the charges," the judge might be "'more lenient' at sentencing than if he accepted a plea agreement." JA582.

6

During the arraignment, Wentz continued to reassure Brown about his sentencing exposure. The district court advised Brown that he faced up to 20 years on each of the four drug charges, and it asked whether Brown "under[stood] the potential penalties associated with Counts 1 through 4." JA52. At that point, Brown requested to confer with Wentz off the record. JA52. As Brown later explained—and Wentz did not contest—Wentz told him during that conversation "to worry not about the statutory maximum but to focus on the guideline range they had discussed." JA582. Based on that reassurance, Brown told the court that he understood the potential penalties. *See* JA53. A similar exchange occurred regarding the gun charge: the judge explained that Brown faced up to "10 years imprisonment" unless he was "determined to be an armed career criminal," in which case the potential prison sentence "increase[d] to a term of … not less than 15 years." JA53. The judge asked whether Brown "underst[ood] all those potential penalties as to Count 5." JA53. Again, Brown requested to confer with Wentz off the record, and again Wentz told Brown "not to worry about it." JA582. Brown then again answered to the court, "[y]es, sir." JA54. Likewise, Brown assented when the district court advised him that it had the "authority to impose the

7

maximum penalty authorized" and that it should not rely on his attorney's guidelines calculations. JA55. Ultimately, Brown entered his guilty plea. JA57.

At sentencing, the court sentenced Brown to a total of 210 months—17.5 years—in prison. JA110. The court calculated an advisory guidelines range of 87 to 108 months. JA93. It agreed, however, with the Government's motion for an upward departure to a range of 168 to 210 months on Counts 1 through 4. JA100. The court then sentenced Brown to 210 months on each of Counts 1 through 4 and 120 months on Count 5, to be served concurrently. JA110.

On direct appeal, Brown argued that his sentence was (1) "procedurally unreasonable because the district court did not adequately address his arguments for a lower sentence" and (2) substantively unreasonable because a sentence within the original guidelines range of 87 to 108 months would have satisfied the goals of sentencing. *See* JA116-126. This Court affirmed the trial court's sentence. JA130.

## C.    Post-Conviction Proceedings

Brown first learned that Wentz provided him erroneous legal advice after he arrived at a Federal Bureau of Prisons ("BOP") facility and another inmate helped him "understand what was going on with [his] case." JA487-488. After his direct appeal was denied, Brown moved pursuant to 28 U.S.C. § 2255 to vacate his sentence based on ineffective assistance of counsel during his plea negotiations. JA596; *see* JA133-164. In response, the Government conceded that Wentz failed to properly advise Brown and thus that Brown had "made the requisite showing of deficient performance by counsel." JA168.

The district court referred the matter to a magistrate judge to hold an evidentiary hearing to determine whether Brown was prejudiced by Wentz's concededly deficient advice. JA598.

Throughout the proceedings, including at the evidentiary hearing, Brown testified consistently and unequivocally that he would have accepted the Government's plea offer had he known that pleading guilty to all five charges exposed him to a sentence of 90 years rather than 10. JA480; JA485; *see also* JA303 (Brown's testimony in deposition that he would have accepted the plea); *infra* at 23. Based on Wentz's advice,

Brown believed that his "maximum exposure" when he pleaded to all five counts was "[n]o more than ten years." JA484. Brown testified that if he had understood that his "exposure was actually 90 years," he "would have taken the plea that was offered to" him. JA485.

Brown also addressed the Rule 11 plea colloquy during his testimony. Brown testified to his off-the-record exchanges with Wentz, who reassured him that he should not "worry" that the district court had recited statutory maximum sentences that differed from what Wentz had advised. Brown explained that the "conclusion" he drew was that he should "not [] worry about what the judge was actually saying at the time." JA484. Brown also explained that when he answered "[y]es, sir" to the judge's questions, he did so "based off [his] lawyer's advice." JA506.

Brown's original lawyer, Harper, also testified to the initial plea negotiations and his relationship with Brown. JA514-528. When asked "what was the issue" with the "plea agreements" that the Government offered Brown, Harper responded that "[t]here were a couple of issues." JA522. First, Harper explained that Brown "was not happy with the ten years" and confirmed that Brown "wanted to get something better than

the ten years." JA523. Second, Harper noted that the agreement required an "appeal waiver … which was in all the plea offers." JA522.

One month later, the district court heard a second day of testimony, and Wentz testified. As noted above, Wentz did not contest Brown's recitation of what they conferred about off the record during the arraignment. *Supra* at 7; *see* JA540-541. But he suggested—for the first time—that the appeal waiver was the dispositive factor in Brown's decision to decline the plea offer. *See* JA539 ("I believe his issue was with the appellate waiver. That's my recollection."). Wentz had previously signed an affidavit in October 2019 stating that Brown "rejected the plea offer" "because of *several* factors and specific language contained within the plea offer." JA185 ¶ 6 (emphasis added). He did not specifically mention the appeal waiver. *See* JA185 ¶ 6.

### D. The Decision Below

After the evidentiary hearing, the magistrate judge issued a memorandum and recommendation in which he concluded that Brown did not establish prejudice by a preponderance of the evidence because he "presented no contemporaneous evidence to support his claim that he would have accepted the plea agreement if he knew he faced more than

10 years in prison." JA579. The magistrate judge did not question the credibility of Brown's testimony. *See* JA579-593. Nonetheless, the magistrate judge recommended ruling against Brown, as the judge believed that "[t]o be entitled to relief, there must be 'contemporaneous evidence to substantiate a defendant's expressed preferences.'" JA588 (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017)).

The magistrate judge concluded that Brown failed to marshal contemporaneous evidence to support his claim, and reasoned instead that "the contemporaneous evidence suggests that Brown's decision to reject the plea agreement was based on a desire to maintain his right to appeal his conviction and sentence." JA589. First, the court faulted Brown for not "rais[ing] concerns over his potential sentence" during his arraignment or sentencing hearing. JA589; JA591. Second, the court faulted Brown for not asking his attorney to raise the ineffective-assistance claim on direct appeal. JA591-592. Finally, the court cited testimony that Brown was concerned about "waiv[ing] his right to appeal or collaterally attack his conviction or sentence." JA592.

Over Brown's timely objection, JA594-595, the district court adopted the magistrate judge's recommendation, JA602. Like the

magistrate judge, the district court proceeded from the premise that it could not rule for Brown unless he presented "contemporaneous evidence to substantiate [his] expressed preferences." JA601. It then adopted the magistrate judge's finding that Brown had not provided such contemporaneous evidence, and that the record instead established that "Brown's desire to avoid waiving his right to appeal was more important to Brown than his sentencing exposure." JA601.

Brown now appeals the district court's order dismissing his petition under Section 2255. On April 29, 2024, the Court granted a certificate of appealability and appointed the undersigned counsel to represent Brown in this appeal. ECF No. 13 (Apr. 29, 2024).

## STANDARD OF REVIEW

To prevail on a claim for ineffective assistance of counsel, a defendant must show (1) that his counsel performed deficiently and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Under this standard, a defendant need not "prove

13

by [even] a preponderance of the evidence that but for error things would have been different." *United States v. Lockhart*, 947 F.3d 187, 192 (4th Cir. 2020) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)). Instead, a defendant need only "satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding.'" *Id.* at 192-93 (quotation omitted); *see also United States v. Kim*, 71 F.4th 155, 166 (4th Cir. 2023) (same).

This Court reviews *de novo* a district court's legal conclusions in denying a motion under 28 U.S.C. § 2255. *United States v. MacDonald*, 911 F.3d 723, 797 (4th Cir. 2018). While the Court reviews a district court's factual findings for clear error, *United States v. Ragin*, 820 F.3d 609, 616 (4th Cir. 2016), the ultimate "question of whether trial counsel provided ineffective assistance is a mixed question of law and fact which [the Court] review[s] *de novo*," *United States v. Tucker*, 603 F.3d 260, 262 (4th Cir. 2010).

## SUMMARY OF ARGUMENT

Brown's counsel misadvised him about his sentencing exposure during plea negotiations, and Brown relied on that faulty advice when he

14

turned down the Government's plea deal.  The Government does not dispute that Brown's counsel performed deficiently.  Prejudice is just as straightforward.

**I.** Brown established a reasonable probability that he suffered prejudice from his counsel's concededly deficient performance.

**A.**  The Supreme Court has recognized that a defendant will ordinarily establish a reasonable probability that he would have accepted the prosecutor's original plea offer but for counsel's deficient performance if he later pleaded guilty to a more serious charge.  This Court, along with its sister circuits, have consistently applied that precedent to hold that a defendant establishes prejudice by showing (1) his *amenability* to pleading guilty and (2) a severe sentencing *disparity* between the plea offer and the sentencing exposure the defendant accepted instead.

**B.**  This case involves a straightforward application of that precedent.  Brown was clearly "amenable" to pleading guilty: he pleaded guilty shortly after he turned down the Government's plea deal.  And the sentencing disparity Brown faced was extreme: had he pleaded guilty with the deal, his exposure would have been capped at 10 years; by pleading with no deal, however, he faced up to 90 years in prison.  That

15

is a cut-and-dried case of prejudice, made all the clearer by other objective, contemporaneous evidence in the record.

**II.** The district court reached a contrary conclusion because it applied the wrong legal test. And it aggravated that error by drawing legally impermissible inferences from the record.

**A.** The district court held that Brown could not establish prejudice because he had failed to provide any "contemporaneous evidence" to support his testimony. But there is no *per se* requirement that a defendant who, like Brown, rejected a comparatively favorable plea bargain only to later plead guilty without a deal provide "contemporaneous evidence" beyond his testimony. And, even if there were, the requirement would be satisfied by the guilty plea itself. To counsel's knowledge, *no* court of appeals has done what the district court did here: hold that when a defendant rejects a favorable plea deal but then pleads guilty to more serious charges without any deal, he must necessarily produce some additional "contemporaneous evidence" to establish prejudice. On the contrary, the courts of appeals hold either that the contemporaneous-evidence requirement does not apply or that it is satisfied by the fact of the later guilty plea.

**B.** The district court also drew legally impermissible inferences from the record.

First and foremost, the district court thought that Brown cared more about preserving his appellate rights than he did about his sentencing exposure. That holding is erroneous because Brown's understanding of the tradeoff between the plea deal and appellate waiver was infected by counsel's deficient performance: Because Brown did not know the sentencing consequences of refusing the deal, he could not have assessed the tradeoff between his appellate rights and his sentencing exposure.

The district court committed a similar error when it faulted Brown for stating during his Rule 11 hearing that he understood the potential penalties. Brown's counsel continued to reassure him throughout that hearing that he should disregard the judge's warnings, and so that proceeding, too, was infected by counsel's deficient performance.

Finally, the district court manifestly erred by suggesting that Brown should have availed himself of the opportunity to raise an ineffective-assistance claim on direct appeal. There was no such

opportunity, as this Court has squarely precluded this type of claim on direct appeal.

**III.** To cure the Sixth Amendment violation, the appropriate remedy is to vacate the judgment below and remand with instructions for the Government to re-offer Brown the original plea deal. That remedy follows from the Court's precedents and is consistent with the Government's position below.

## ARGUMENT

Brown is serving a substantially longer sentence because he received ineffective assistance of counsel. The Government has conceded that Brown's counsel performed deficiently, and the only remaining question is whether there is a reasonable probability that he was prejudiced. The answer is yes. Brown's guilty plea and testimony alone establish a reasonable probability of prejudice, and the record was replete with additional evidence to corroborate his claim.

The district court's contrary conclusion was legally flawed in two respects. First, the court demanded additional "contemporaneous evidence" about Brown's preferences that Supreme Court precedent— and the decisions of other courts of appeals—make clear is not necessary.

And second, the court rested its holding on inferences about Brown's decisions that conflict with the governing law and the record.

## I. BROWN ESTABLISHED A REASONABLE PROBABILITY THAT HE SUFFERED PREJUDICE FROM HIS COUNSEL'S CONCEDEDLY DEFICIENT PERFORMANCE.

Brown has established prejudice from his counsel's deficient performance during plea negotiations. The Sixth Amendment right to effective assistance of counsel applies to "all 'critical' stages of the criminal proceedings," including the plea-bargaining process. *Frye*, 566 U.S. at 140. As the Supreme Court has recognized, "plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires." *Id.* at 143.

To show prejudice in this context, a defendant must establish only "a reasonable probability" that he "would have accepted the earlier plea offer" had he been provided effective assistance. *Frye*, 566 U.S. at 147; *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021).[1] Brown

---

[1] The defendant must also establish that "there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Frye*, 566 U.S.

satisfies that standard here.  As courts have recognized, most defendants'

primary consideration when pleading guilty is minimizing sentence

exposure.  The evidence is overwhelming that Brown is no different, and

that he would not have rejected the Government's deal had he understood

that doing so exposed him to the possibility of an additional 80 years in

prison.

### A. Defendants ordinarily suffer prejudice when they plead guilty to more serious charges based on counsel's erroneous advice.

The Supreme Court has held that a defendant will ordinarily

establish a "reasonable probability" that he "would have accepted the

prosecutor's original offer of a plea bargain" but for counsel's deficient

performance if he later "pleaded guilty to a more serious charge."  *Frye*,

566 U.S. at 149-50.  In *Frye*, the defendant's counsel failed to convey to

him two plea bargains offered by the prosecutor, and the defendant

pleaded guilty with no agreement in place.  *Id.* at 138-39.  The Court held

that the defendant had established prejudice from that deficient

---

at 148.  The Government has never contested this prong, *see* JA168, and the plea in this case was "a sufficiently well-defined offer to infer that the plea would have been … entered."  *Merzbacher v. Shearin*, 706 F.3d 356, 369 (4th Cir. 2013); *see also Mayhew*, 995 F.3d at 177.

performance, reasoning that the very fact that Frye "pleaded guilty to a more serious charge, with no promise of a sentencing recommendation from the prosecutor" established "a reasonable probability Frye would have accepted the prosecutor's original offer of a plea bargain if the offer had been communicated to him." *Id.* at 150.

Applying *Frye*, this Court and other courts of appeals have consistently held that a defendant establishes prejudice when he testifies that he would have accepted a plea offer and there is: "(1) evidence showing [he] was *amenable* to accepting a guilty plea; … and (2) [a] significant *disparity* between the plea offer and [the] sentencing exposure" the defendant accepted instead. *United States v. Kearn*, 90 F.4th 1301, 1309 (10th Cir. 2024) (emphases added).

This Court followed that approach in *Dodson v. Ballard*, 800 F. App'x 171 (4th Cir. 2020), a case that was briefed and argued but unpublished. The defendant, like Brown, had testified that he had turned down a plea offer "based on his counsel's misunderstanding of the law," and this Court accepted his testimony that he would have accepted the plea but for that deficient performance. *Id.* at 172. The Court reached that conclusion even though the defendant there had proceeded

21

to trial rather than pleading guilty. *See id.* As the Court explained, it suffced that the defendant had produced evidence showing he was *amenable* to pleading guilty—namely, his "history of accepting plea offers" in connection with past offenses—and the "severe sentencing disparity [the defendant] faced by proceeding to trial." *Id.* at 180-81.

This Court's approach in *Dodson* is consistent with that of the other courts of appeals. In *United States v. Knight*, 981 F.3d 1095 (D.C. Cir. 2020), the D.C. Circuit cited this Court's decision in *Dodson*, and held that the defendant had established prejudice in light of (1) evidence that he "might have been amenable to accepting the plea offer" (based on "a limited exchange" he had with counsel about it); and (2) "the significant disparity in sentencing exposure between the plea offer" and the charges the defendant faced by proceeding to trial. *Id.* at 1102-03. The Sixth Circuit reached the same conclusion in *Byrd v. Skipper*, 940 F.3d 248 (6th Cir. 2019), holding a defendant suffered prejudice based on (1) evidence of his amenability to pleading guilty ("he specifically asked Barnett about the possibility of pleading") and (2) the disparity in sentencing exposure he faced by going to trial ("going home eventually is far preferable than never going home at all"). *Id.* at 259 (emphasis omitted); *see Magana v.*

22

*Hofbauer*, 263 F.3d 542 (6th Cir. 2001) (similar). The Second and Tenth Circuits have applied the same rule. *Kearn*, 90 F.4th at 1309-12; *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998).

**B.  Brown easily demonstrated prejudice under the proper standard.**

This case involves a particularly straightforward application of those precedents. Brown testified that if he had understood that his sentencing "exposure was actually 90 years," he "would have taken the plea that was offered to" him. JA485. Extensive evidence corroborated his testimony. Brown thus satisfies the two requirements—amenability to pleading guilty and a significant disparity in sentencing exposure—to show prejudice from his counsel's deficient advice.

First, Brown has clearly demonstrated an amenability to pleading guilty. Brown—like the defendant in *Frye*—pleaded guilty in this very case to more "serious charges" than those offered in the plea deal. *Frye*, 566 U.S. at 150. Indeed, Brown's decision to reject the Government's offer was "close" in time to his own guilty plea—perhaps just a "day or two prior to the Rule 11" hearing, JA547—leaving no possibility of "revelations between plea offers about the strength of the prosecution's case," *Frye*, 566 U.S. at 150. The evidence is thus far stronger than the

23

"history of accepting plea offers," *Dodson*, 800 F. App'x at 181, or an "exchange" with counsel about pleading guilty, *Knight*, 981 F.3d at 1103, that this Court and others have found sufficient.

Second, the sentencing disparity Brown faced was extreme. Had Brown pleaded with the deal, his exposure would have been capped at 10 years. But by pleading with no deal, he faced up to 90 years in prison. JA480. Indeed, the disparity is all the more pronounced here given that Brown *pleaded guilty*. Defendants who roll the dice at trial at least face the possibility of exculpation, so they gain a real benefit by risking a longer sentence. *See, e.g.*, *Sims v. United States*, 785 F. App'x 632, 635 (11th Cir. 2019) (per curiam). Not so for Brown. By pleading guilty, Brown accepted that a conviction and significant jail time were certain— indeed, his counsel advised him to expect a significant sentence. *See* JA490-491; *see also* JA293-294 (Brown recognized his sentencing judge had a reputation as a "severe punisher"). His goal with pleading guilty— rather than proceeding to trial—was to minimize his sentencing exposure. *See* JA473, JA478 (Brown testifying that he made the decision early to plead rather than trial); JA293-294 (similar); *see also* JA260 (Brown explaining that his goal with his plea was to get home sooner to

24

his children).  That alone shows a "reasonable probability" that he would have accepted a plea deal that limited his exposure to 10 years, rather than plead with no deal to counts that exposed him to up to 90 years in prison.  *Frye*, 566 U.S. at 149-50.

Because both factors are clear-cut on this record, the Court can conclude that Brown was prejudiced without considering additional extrinsic evidence.  But the available extrinsic evidence only underscores the importance that Brown placed on both his sentencing exposure and his counsel's advice about that exposure.

During the Rule 11 proceedings, the transcript reflects that Brown asked twice to confer with his attorney immediately after the district court suggested that he faced a sentence of more than 10 years.  JA52-53.  As Brown explained in undisputed testimony, he wanted to understand why the judge spoke about a maximum of "20 years" for each count, when his attorney "didn't say anything about 20 years."  JA483.  Brown agreed to proceed with the plea only after he believed that his attorney had reassured him that his exposure was capped at 10 years.  JA483-485.

The Supreme Court has found prejudice based on similar plea colloquies. In *Lee v. United States*, 582 U.S. 357 (2017), the Supreme Court considered a defendant who alleged that his counsel's deficient advice had led him to accept a guilty plea by failing to inform him that his conviction required mandatory deportation. *See id.* at 367. The defendant testified that he would have gone to trial had he properly understood the immigration consequences of his guilty plea, as his preference was to avoid deportation at all costs. *See id.* The Court held that the defendant had established prejudice, including by citing evidence from his plea proceedings: When the judge warned that a conviction could result in deportation, Lee "turned to his attorney for advice" and "[o]nly when Lee's counsel assured him that the judge's statement was a 'standard warning' was Lee willing to proceed to plea guilty." *Id.* at 369 (quotation omitted). That is exactly what Brown did here—twice.

Lest there be any doubt, both of Brown's counsel corroborated his testimony about the primacy he placed on his sentencing exposure. That was the reason he wanted to plead guilty from the outset, rather than proceed to trial. JA473. Sentencing exposure was a key consideration

26

when he parted ways with first counsel, JA477, and one on which he focused discussions with his second counsel, JA478-481. In short, the evidence consistently showed that Brown cared deeply about the sentence he received, and that he would have accepted the plea deal that capped his exposure to 10 years, rather than plead without a deal to a maximum sentence of 90 years.

## II.   THE DISTRICT COURT'S CONTRARY CONCLUSION IS INCORRECT.

Despite the straightforward case for prejudice, the district court ruled against Brown. The court did not question the sincerity of Brown's testimony or issue any adverse finding as to his credibility. JA596-602; *see* JA579-593. Instead, it held that Brown could not establish prejudice because he had failed to provide any "contemporaneous evidence" to support that testimony. JA599; *see* JA592. That conclusion is legally wrong. There is no rigid requirement that Brown produce "contemporaneous evidence" beyond his guilty plea to establish prejudice.

The district court then compounded its errors by holding that three aspects of Brown's behavior undermined his case for prejudice. Each of the court's inferences is legally flawed. Two of them—that Brown cared more about his appellate waiver than about his sentence and that Brown

failed to object during his Rule 11 hearing—rely on decisions Brown made that were infected by his counsel's deficient advice, and thus do not weigh in the prejudice inquiry. And the district court's final objection— that Brown did not raise his ineffective-assistance claim on direct appeal—misunderstands the law of direct appeal, as well as Brown's incentives.

### A. The district court erred in requiring "contemporaneous evidence" beyond Brown's guilty plea to more serious charges.

The district court erred by imposing a *per se* requirement that Brown adduce "contemporaneous evidence" beyond his guilty plea to establish prejudice. When a defendant pleads guilty, there is no need for him to adduce additional contemporaneous evidence to show that he would have accepted an even more favorable plea. Rather, as the Supreme Court has held, the fact that Brown later "pleaded guilty to a more serious charge" will ordinarily suffice to establish prejudice. *Frye*, 566 U.S. at 149-50; *see supra* at 20-21. This Court has repeatedly endorsed that rule. *See Merzbacher*, 706 F.3d at 365-67 ("[P]etitioner's later acceptance of a less advantageous plea lent credibility to his post hoc testimony."); *Akande*, 956 F.3d at 264 n.4 ("A defendant can also show

prejudice by demonstrating that he could have negotiated a plea agreement with terms more favorable than the consequences of the plea he entered on counsel's misadvice.") (citing *United States v. Swaby*, 855 F.3d 233, 241 (4th Cir. 2017)).

*Frye*'s holding rests on the common-sense understanding that nearly every defendant will want to minimize time spent in prison. "It goes without saying that persons in prison would prefer not to be there and may, therefore, avail themselves of an opportunity to reduce the amount of time they have to spend in prison." *United States v. Vaulin*, 132 F.3d 898, 900 (3d Cir. 1997); *Magana*, 263 F.3d at 552 ("It does not strain reason to believe that Magana would have chosen a flat ten-year sentence instead of risking a possible forty-year term."). Of course, some defendants—like those who "avidly and vociferously maintain[] [their] innocence"—will risk a more serious sentence for the opportunity for exculpation *at trial*. *Merzbacher*, 706 F.3d at 365-67. But where a defendant has shown an amenability to accepting a guilty plea—and particularly where, as here, he has *actually pleaded guilty*—that defendant presumptively would have accepted a more favorable guilty

plea had he been properly advised about it.  *See supra* at 20-23; *see also*

*Frye*, 566 U.S. at 149-50.

The district court's holding cannot be reconciled with those

precedents.  The district court held that Brown had "presented *no*

contemporaneous evidence to support his claim that he would have

accepted his plea agreement if [counsel] properly advised him about his

sentencing exposure."  JA599 (quoting JA589) (emphasis added).  But

*Frye* makes clear that a guilty plea to more serious charges is probative

of—and can be dispositive of—prejudice.  Or, to put it in the district

court's terms, the guilty plea *itself* can serve as all the "contemporaneous

evidence" needed to corroborate a defendant's testimony.  *Cf.* JA599.  No

matter how phrased, the district court misunderstood that legal rule—an

error that cut to the core of its reasoning on the prejudice question.

    1.    Lee v. United States *does not warrant a different*
          *result.*

The district court reached its erroneous conclusion by relying on an

inapposite passage from *Lee v. United States*.  In *Lee*, as explained, the

defendant alleged that he had *accepted* a guilty plea based on counsel's

deficient advice as to its deportation consequences, and that he would

have proceeded to trial had he been properly counseled.  582 U.S. at 361-

62. The Government argued that Lee could not prove prejudice because "the overwhelming evidence of Lee's guilt" would have "almost certainly" resulted in his conviction, at which point he would have received a longer prison sentence and deportation. *Id.* The Supreme Court disagreed. Though Lee's chances of success at trial were slim, the Court held that it was possible that a defendant might prefer to risk trial to avoid the life-altering consequences of deportation. *Id.* at 371. At the same time, the Court advised that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 369. Instead, the Court held, judges should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*

The flaw in the district court's analysis is that *Lee* addresses a situation entirely distinct from this case. *Lee*'s requirement that a defendant adduce additional "contemporaneous evidence" suited the context before it, where a defendant *accepted* a guilty plea and argued that he might have *rejected* it despite having "no viable defense" at trial. 582 U.S. at 366. Defendants may differ in whether they risk a longer prison sentence for the chance—however small—to avoid deportation. So

in that circumstance, a court must probe whether there was additional "contemporaneous evidence" as to a defendant's motivations in accepting or denying a guilty plea. *See id.* at 369. By contrast, *Lee* has no bearing on cases where a defendant argues that he would have accepted a more favorable plea bargain but for his counsel's deficient advice. As explained, courts have readily accepted the basic point that defendants will want to minimize time spent in prison. *See supra* at 29-30. That is why the Supreme Court has held it sufficient to establish prejudice that the defendant later "pleaded guilty to a more serious charge." *Frye*, 566 U.S. at 149-50.

Indeed, the Court in *Lee* expressly distinguished the case from *Frye* and a separate decision issued the same day, *Lafler v. Cooper*, 566 U.S. 156 (2012). "Those cases," the Court emphasized, "involved defendants who alleged that, but for their attorney's incompetence, they would have *accepted* a plea deal—not, as here … that they would have rejected a plea." *Lee*, 528 U.S. at 365 n.1. Thus, "*Frye* and *Lafler* articulated a *different* way to show prejudice, suited to the context of pleas not accepted." *Id.* That, of course, is the context of this case, which is why the district court should have followed *Frye* instead of *Lee*.

2. *The courts of appeals have rejected the district court's flawed understanding of* Lee.

For these reasons, the courts of appeals have correctly and resoundingly rejected the district court's extension of *Lee* to this context. The courts have taken two approaches: one flatly holds that no contemporaneous evidence is required, while others conclude that the sentencing disparity itself is the requisite contemporaneous evidence. This Court need not choose between these approaches because, on either, the district court's ruling is indefensible.

**a.** The Fifth Circuit holds that when a defendant *rejects* a guilty plea due to counsel's deficient advice, "*Lee*'s requirement for contemporaneous evidence is simply irrelevant." *Anaya v. Lumpkin*, 976 F.3d 545, 554-56 (5th Cir. 2020). As the court explained, "*Lee* imposed standards for overturning an *accepted* plea deal, not standards for obligating the Government to offer again a plea *rejected* by the defendant." *Id.* at 554-55. The Fifth Circuit has therefore refused entirely to apply *Lee*'s contemporaneous-evidence requirement in the "context of pleas not accepted." *Id.* at 556 (quoting *Lee*, 582 U.S. at 365 n.1).

33

**b.**  Other courts of appeals, including the Tenth and D.C. Circuits, have applied a "contemporaneous evidence" requirement, but hold that it is almost always satisfied when a defendant rejects a guilty plea.  For these courts, no contemporaneous evidence is required beyond some evidence of an amenability to plead guilty and a "significant disparity between the plea offer and [the] sentencing exposure" the defendant accepted.  *Kearn*, 90 F.4th at 1309; *see supra* at 21-23.  The "significant sentencing disparity," the D.C. Circuit explained, "*is* contemporaneous evidence that [the defendant] would have accepted the plea offer had counsel correctly apprised him of how favorable it was and of the sentencing exposure he would face if he declined the offer." *Knight*, 981 F.3d at 1103 (emphasis added).

Whether this Court follows the approach of those courts of appeals or that of Fifth Circuit, the result in this case is the same:  Brown adduced all the contemporaneous evidence necessary to establish prejudice.  Of course, the Government may always seek to rebut that showing, and the Supreme Court has left open whether "in some cases defendants must show more than just a guilty plea to a charge or sentence harsher than

the original offer." *Frye*, 566 U.S. at 150.[2] But in general, the fact of the "guilty plea to a charge or sentence harsher than the original offer" will suffice to establish prejudice. *Id.* Such is the case here: Brown's guilty plea later to more serious crimes without a deal must be treated as evidence of his amenability to accept the Government's deal.

B. **The district court further erred in drawing legally improper inferences from the record.**

Applying the right legal standard, the district court's judgment cannot be sustained. The record is replete with evidence corroborating Brown's account, including (1) his guilty plea to more serious charges; (2) his sworn testimony that he would have accepted the better plea deal had he been properly informed; (3) his Rule 11 proceeding, during which he twice paused proceedings out of concern when the district court stated

---

[2] This Court's decision in *Walters v. Martin*, 18 F.4th 434 (4th Cir. 2021) is an example. There, a defendant pleaded guilty in January 2013 and challenged his counsel's failure to relay a more favorable plea deal offered in March 2012. *Id.* at 436-37. The problem with his argument, however, was that counsel *did* relay the plea deal in July 2012 and the defendant indicated no interest in accepting the offer at that time. *Id.* at 436. In that context, defendant's later plea—entered six months later—hardly served as "contemporaneous evidence" of how the defendant would have reacted in March 2012, and the record instead showed that the defendant "was unwilling to accept a substantial term of incarceration during the relevant timeframe." *Id.* at 443.

he could face exposure greater than 10 years and only resumed after reassurance from his counsel; and (4) testimony from both of his attorneys about the importance Brown placed on minimizing his sentencing exposure. *See supra* Part I.B.

The district erred twice over, first in disregarding all of that evidence and second by instead assigning dispositive weight to decisions Brown made that were infected with counsel's bad advice. The court cited three reasons that it believed Brown would not have accepted the plea even if his counsel had provided correct advice: (1) Brown's professed interest in avoiding an appeal waiver; (2) Brown's affirmations during the Rule 11 hearing; and (3) the fact that Brown did not raise an ineffective-assistance claim on direct appeal. But each of these reasons rest on misunderstandings of the law, improper speculation, or both.[3]

---

[3] The Court reviews *de novo* the district court's ruling of whether the record establishes that Brown was prejudiced by his counsel's deficient performance. *See Ragin*, 820 F.3d at 616; *Knight*, 981 F.3d at 1110. Because the district court's prejudice ruling is bound up in the legal errors described below, there is no need to review any of the court's factual findings for clear error. But if the Court disagrees, it should conclude that the district clearly erred in its understanding of the facts. *See Ragin*, 820 F.3d at 620-22.

1. *There is no evidence that, had he been properly advised, Brown would have prioritized preserving his appellate rights.*

The district court held that Brown failed to demonstrate prejudice because his "desire to avoid waiving his right to appeal was more important to [him] than his sentencing exposure." JA601. That theory rests on an erroneous legal premise, because it credits statements that were infected by the erroneous advice that Brown received.

The district court's conclusion relied on the testimony of Brown's former attorney, Brett Wentz. *See supra* at 11. And all of Brown's conversations with Wentz proceeded on the incorrect belief—caused by Wentz's deficient performance as counsel—that Brown would face the same statutory maximum regardless of his plea. Thus, any importance Brown placed on avoiding an appeal waiver was "infected" by counsel's deficient advice. *Knight*, 981 F.3d at 1105. That is, Brown's interest in avoiding an appeal waiver "arose in the context of thinking" that his sentencing exposure was capped at 10 years imprisonment either way. *Id.* With all else equal, Brown might have preferred to preserve his appellate rights. But "[h]is assessment of what was in his best interests could well have changed had he been correctly advised of the

37

consequences of accepting and of rejecting the plea offer." *Id.* Without the proper information about sentencing outcomes, therefore, Brown "lacked the requisite information to weigh the options in front of him." *Kearn*, 90 F.4th at 1311-12 (quotation omitted). And so "whatever desire he exhibited" about the appeal waiver is "not dispositive of what he would have done if he were properly educated about the charges against him." *Id.*

Courts of appeals regularly reject evidence about a defendant's preferences when those preferences were "infected" by counsel's ineffective advice. *See Knight*, 981 F.3d at 1105; *see also Kearn*, 90 F.4th at 1311-12; *Byrd*, 940 F.3d at 258 (any "interest in proceeding to trial was rooted in misinformation gleaned from his counsel's faulty advice, making it an unreliable metric of reasonably probable outcomes."). For good reason. As the Tenth Circuit explained, "we cannot rationally expect defendants to theorize contemporaneously about the decisions they would make if they were receiving different advice. If courts required this kind of evidence, no defendant could show prejudice." *Kearn*, 90 F.4th at 1312 (internal quotations marks omitted).

So too here. Brown had been told repeatedly that his sentence would be capped at 10 years regardless of how he pleaded. This mistaken advice infected the rest of the plea negotiations, including any desire of Brown's, expressed to his counsel, to preserve his appellate rights. There was *no* evidence that Brown would have avoided the appeal waiver *absent counsel's deficient advice*—that is, that he would have prioritized his appellate rights at all even if he had been informed of his true sentencing exposure without a plea. And the district court accordingly erred by assuming his preferences would have remained the same in that situation.

Indeed, all the evidence suggested that, if Brown were forced to pick between minimizing his sentencing exposure and preserving appellate rights, he would have prioritized the former. As explained, Brown testified that his primary concern during plea negotiations was his sentence, JA480; *see also* JA280-281, JA293-294, and his trial counsel provided testimony that corroborated his claims. During the evidentiary hearing, Harper testified that—from the beginning of plea discussion— sentence length was a primary consideration for Brown. *See* JA523.

Wentz, too, testified that Brown asked questions focused on the sentence he would receive with or without a plea deal.  *See* JA582.

Indeed, the evidence consistently showed that Brown put little value on an appeal given his circumstances.  Brown accepted early that he had no viable chance of exculpation, as the Government had ironclad video evidence against him.  JA509.  Thus, he declined to contest his guilt at any stage of the proceedings.  Instead, on direct appeal, Brown argued only that he should have received a sentence within his guidelines range, which ran up to 108 months—just 12 months less than the 120-month maximum he could have received with the deal.  It is farfetched that Brown would have traded an extra 80 years in sentencing exposure for the chance to argue on appeal that the court should shave *one year* off his sentence.  At the very least, there is a "reasonable probability" that Brown would not have made that choice.

If Brown had really cared more about preserving appellate rights than sentencing exposure, he could have proceeded to trial, where he would have at least faced the possibility of acquittal on some or all counts and maintained a far broader array of issues to raise on appeal.  No evidence explained why Brown would have cared enough about an appeal

waiver to plead guilty with no deal, but not enough to exercise his right to trial. The simple explanation is the right one: Brown's desire to avoid waiving his appellate rights was *not* more important than his sentencing exposure.

Not surprisingly, then, the Government's appellate waiver argument was late-breaking. For three years while Brown's ineffective-assistance claim was pending, there was no suggestion that an appeal waiver was relevant—much less dispositive—to his decision. In 2019, Wentz signed a declaration stating that Brown was reticent to accept the plea "because of *several factors* and specific language contained within the plea offer." JA185 ¶ 6 (emphasis added). The declaration makes no mention of an appeal waiver, and directly undercuts any argument that the appeal waiver alone—rather than "several factors"—guided his decision-making. *See* JA185 ¶ 6.

The appellate waiver argument was raised for the first time during an evidentiary hearing in 2022. And even then, trial counsel did not suggest that the appeal waiver was the dispositive factor to Brown's decision. Rather, Brown's original counsel, Harper, stated that there were a "couple of issues" that caused Brown not to take the plea deal,

including both the appeal waiver and concerns about the length of the sentence. JA522. It was only a month later, during the second day of the evidentiary hearing, that the Government suggested the appellate waiver was the deciding factor for Brown when he otherwise believed he faced an equivalent statutory minimum with or without the deal. Because the Government raised this argument so late in the game, Brown had no opportunity to address it directly through his testimony during the evidentiary hearing. JA572 (counsel for Brown stating "this litigation has been going on for about two years now" and that "this is the first time the appellate waiver issue has come up"). Brown, however, made clear during his deposition that the appeal waiver was not dispositive to his decision. JA280-281, JA302.[4]

But even taken at face value, Wentz's testimony spoke only to why Brown turned down the plea deal when he believed *his sentencing*

---

[4] The district court also cited a letter Brown sent to his counsel about arguments to raise on direct appeal. In that letter, Brown expressed concern that the Government had sought an upward variance to punish him for refusing to agree to the appeal waiver. JA114. The fact that Brown believed that the appeal waiver influenced the *Government's* advocacy does not suggest that avoiding an appellate waiver was the only factor in *his own* decision-making as to whether to accept the plea bargain.

*exposure was the same.* That testimony says nothing about how Brown would have reacted had he been properly advised. Nor does any other record evidence. The district court therefore erred in engaging in speculation and assigning such significant weight to a decision "rooted in misinformation gleaned from his counsel's faulty advice." *Byrd*, 940 F.3d at 258.

### 2. *The Rule 11 hearing supports—rather than undermines—Brown's testimony.*

The district court made a similar mistake when it faulted Brown for failing to raise concerns about his plea during his Rule 11 hearing. During that colloquy, Brown attested that he "under[stood] the potential penalties associated" with his counts of conviction. JA52.[5] The district court therefore cited the "opportunities when Brown could have raised, but did not raise, concerns over his sentencing exposure," including his "Rule 11 hearing." JA599.

---

[5] As the district court correctly recognized, even if Brown had understood the district court's warnings (and it is clear that he did not, *see infra* at 44), the Rule 11 hearing could not itself cure prejudice. That is because Brown had already rejected the government's plea offer and there was thus no guarantee that it would be available even had he sought to reverse course. JA587 (citing *Mayhew*, 995 F.3d at 180-81).

But here, too, Brown's answers were "infected by counsel's deficient performance," as his counsel continued to assure Brown throughout the colloquy that he in fact faced only 10 years. *Knight*, 981 F.3d at 1105. As explained, Brown twice paused proceedings at key moments to clarify his sentencing exposure with his "trusted" lawyer. JA508. Brown's uncontroverted testimony below was that his attorney told him to disregard the judge's statements, and focus instead on what they had "already discussed," which Brown interpreted to mean that his exposure was in fact capped at 10 years. *See supra* at 5-8; JA513 ("[A]s far as I could understand what I was gettin' from my lawyer, either way it went, I couldn't get no more than ten years throughout the whole time"). Thus, Brown told the judge that he "understood" his sentencing exposure because he believed that his attorney had properly advised him. JA52-53. As such, his affirmations during that Rule 11 hearing do not undermine the credible testimony he provided at the evidentiary hearing below—that had he understood his actual statutory maximum, he would not have pleaded without a deal.

The district court's contrary conclusion is inconsistent with the very foundation of the attorney-client relationship. Defendants routinely rely

44

on attorneys to provide legal guidance when interpreting a judge's standard warnings. Indeed, as this Court has recognized, "a critical component of the Sixth Amendment's guarantee of effective assistance" is that it allows a defendant to build a "'relationship characterized by trust and confidence'" with his counsel. *United States v. Chavez*, 902 F.2d 259, 266 (4th Cir. 1990) (quoting *Morris v. Slappy*, 461 U.S. 1, 21 (1983) (Brennan, J., concurring)). Requiring defendants to actively disregard the advice of their attorneys contravenes the relationship at the core of the right to counsel. And it is also unrealistic: as "legal rules and obligations become more complex, clients are forced to rely increasingly on their attorneys, thus elevating the importance of the attorney-client relationship." *Whitehouse v. U.S. Dist. Ct. for Dist. of Rhode Island*, 53 F.3d 1349, 1360 (1st Cir. 1995). "This is particularly true in criminal cases," where "[c]lients rely extensively on their attorneys' judgment, advice, and professional competence." *Id.* And so this Court has been particularly solicitous in the plea-colloquy context to the challenges faced by "nonlawyer[]" defendants in understanding the warnings given in the face of conflicting advice from counsel. *Akande*, 956 F.3d at 263.

45

This Court's decision in *United States v. Murillo*, 927 F.3d 808 (4th Cir. 2019), well illustrates the problems with the district court's approach. In *Murillo*, the defendant "ha[d] been told—multiple times—that immigration consequences [were] not mandated but merely a 'possibility'" as a result of his plea. *Id.* at 817. That advice was wrong. And so even though Murillo's plea agreement had language indicating that he intended to plead guilty "regardless of any immigration consequences," this Court refused to let a "single line from a plea agreement" outweigh the "balance of the evidence" that Murillo would not have pleaded guilty if he had been properly informed that doing so meant mandatory deportation. *Id.* at 815. Counsel's repeated, erroneous advice had colored the plea decision and overrode Murillo's true desires to minimize deportation risk.

Here, too, Brown relied on his attorney's erroneous advice until the moment he pleaded guilty, and the district court was clearly wrong to treat as probative decisions Brown made that were tainted by that deficient performance.

46

3. *Brown's approach to direct appeal does not undermine his case.*

Finally, the district court manifestly erred by faulting Brown for failing to raise his ineffective-assistance claim on direct appeal. JA599. This Court, after all, has squarely held that ineffective assistance is not a cognizable argument on direct appeal unless the record conclusively establishes ineffective assistance. *United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'") (quoting *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992)); *see United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010). Here, the record undoubtedly would have required development, including—at minimum—testimony from Wentz as to the deficient advice he provided Brown in private. Thus, the district court was patently wrong to include "direct appeal" as among the "opportunities" Brown had to raise concerns about ineffective assistance of counsel or treat as probative his failure to do so. *Cf.* JA599. Indeed, the district court's rule would create perverse incentives, requiring

litigants to raise unavailable—even frivolous—arguments on direct appeal merely to preserve their argument for later.

For similar reasons, it does not matter that, in a letter that Brown sent to his appellate counsel from prison, he did not list his ineffectiveness claim as among the "relevant issues" for "direct appeal." JA114. Brown's arguments were all focused on the substantive and procedural unreasonableness of his sentence—arguments viable on direct appeal. *See* JA114 ¶ 6. In a single sentence, Brown noted that his "trial attorney should have asked for a continuance" when the Government belatedly noted that it would seek an upward variance, but he did not suggest that he could receive relief on this basis or even mention an ineffective-assistance claim. *See* JA114 ¶ 7. And the arguments Brown did raise—challenges to his sentence—only corroborate his testimony: all along, Brown's primary concern was limiting the time he spent in prison, rather than pursuing any shot at exculpation.

Indeed, the district court's logic fails on its own terms. By the time of his appeal, all agree that Brown was aware that his counsel had advised him incorrectly about his sentencing exposure. JA592. And

Brown now had the benefit of hindsight: he knew he had been sentenced to 17.5 years—7.5 years more than the plea bargain that he had left on table.  If Brown intended to manufacture a claim, he would have every reason to do so on direct appeal, including in the letter he publicly filed on the Court's docket.  The district court never explained why Brown would wait until his Section 2255 proceedings to begin fabricating his testimony, and the only logical inference is that Brown told the truth below.

\* \* \*

In the end, the contemporaneous evidence confirms what common sense dictates: That Brown, like most any defendant, would have accepted a plea deal that shaved 80 years off his sentencing exposure if only he had been properly advised.  And even if there were any trace of doubt, that would not defeat Brown's claim.  All that Brown must do is establish a "reasonable probability" that he would have accepted the Government's deal had he been properly advised; he need not even prove that outcome was more likely than not.  *See Strickland*, 466 U.S. at 694. Brown easily satisfies that modest bar, and the district court erred in holding otherwise.

## III. THIS COURT SHOULD REMAND TO THE DISTRICT COURT WITH INSTRUCTIONS TO ORDER THE GOVERNMENT TO REOFFER THE PREVIOUS PLEA OFFER.

Because Brown's Sixth Amendment's rights were violated, the remedy must "neutralize the taint" of the "constitutional violation" that occurred. *Lafler*, 566 U.S. at 170 (quoting *United States v. Morrison*, 449 U.S. 361, 365 (1981)). After a defendant has demonstrated that ineffective assistance of counsel caused them to reject an offer "for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial," the "correct remedy … is to order the State to reoffer the plea agreement." *Id.* at 171, 174; *see also Dodson*, 800 F. App'x at 181 (holding that the correct remedy is to allow prosecution to either "reinstate its previous plea offer" or release petitioner); *Knight*, 981 F.3d at 1109 (similar).

The same remedy is appropriate here. Indeed, the Government agreed below that "the appropriate remedy would be to vacate [p]etitioner's convictions, and require the Government to re-offer [p]etitioner the rejected plea (pleading to Count 5 of the indictment), and then resentenc[e] [p]etitioner on the sole count, up to a maximum of 120 months." JA179.

What is more, expeditious relief is warranted to ensure that this Court fully "neutralize[s] the taint" of the constitutional violation Brown endured. *Lafler*, 566 U.S. at 170 (quotation omitted). But for his counsel's ineffectiveness, Brown would have pleaded guilty to a count that carried a maximum of 10 years; instead he was sentenced to 17.5 years in prison. With time credit,[6] Brown is at or near as much time in prison as his attorney assured him was possible—and all that the Government deemed necessary when it originally offered him the 10-year plea deal. Moving forward, every day he spends in prison will magnify his attorney's error and the corresponding constitutional violation. *Cf. Glover v. United States*, 531 U.S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance.").

---

[6] Brown has been incarcerated for almost 8.5 years—in federal custody since his arrest in October 2016 and in state custody for six months before for related conduct. *See* JA607. Because Mr. Brown earns 54 days of good time credit for every year served, it is counsel's understanding that he has already served the equivalent of approximately 9.5 years in prison. *See* 18 U.S.C. § 3624(b)(1). And with credit for time earned under the First Step Act, counsel understands that Brown would be eligible for a transfer to supervised release up to one year earlier. *See id.* § 3632(d)(4); *see also id.* § 3624(g).

# CONCLUSION

This Court should vacate the judgment below and remand with instructions for the district court to order the Government to reinstate its original plea offer to Brown in exchange for his guilty plea.

Respectfully submitted,

/s/ *Ashley Robertson*

Anton Metlitsky
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, New York 10019
(212) 326-2000

David K. Roberts
Ashley Robertson
    *Appointed Counsel*
Joshua Revesz
Daniel Lautzenheiser
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300

*Counsel for Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

As reflected in Mr. Brown's motion to expedite, *see* ECF No. 28. (Aug. 7, 2024), Counsel respectfully requests oral argument at the Court's October 29, 2024 sitting (or next availability afterward), unless this Court deems it appropriate to vacate and remand on the papers. If the Court does not vacate and remand on the papers, oral argument is warranted because, as this Court already recognized in granting the certificate of appealability and appointing pro bono counsel, the case raises a serious constitutional question and reasonable jurists might disagree with the district court's decision.

This Court should schedule oral argument at the earliest opportunity because counsel's understanding is that Brown has already served—or soon will have served—the maximum time in prison he could have faced but for the Sixth Amendment violation.

/s/ *Ashley Robertson*
ASHLEY ROBERTSON

August 12, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,230 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced, 14-point Century Schoolbook font using Microsoft Word.

/s/ *Ashley Robertson*
ASHLEY ROBERTSON

August 12, 2024

# CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2024, I electronically filed this brief with the Clerk of this Court using the appellate CM/ECF System. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *Ashley Robertson*
ASHLEY ROBERTSON