# 22-7105

# United States Court of Appeals
## *for the*
# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

— v. —

EDWIN LEO BROWN,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT WILMINGTON

# REPLY BRIEF OF APPELLANT

Anton Metlitsky
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
(212) 326-2000

David K. Roberts
Joshua Revesz
Daniel Lautzenheiser
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300

*Counsel for Appellant*

CP COUNSEL PRESS   (800) 4-APPEAL • (JOB 331446)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

ARGUMENT ..........................................................................................2

I.     CONTEMPORANEOUS EVIDENCE IS NOT REQUIRED TO SHOW PREJUDICE FROM A REJECTED GUILTY PLEA. ...............................................................................................2

II.    THE DISTRICT COURT DREW LEGALLY IMPERMISSIBLE INFERENCES FROM THE RECORD. ..........10

      A.    Brown's decision about an appeal waiver was infected by his attorney's deficient advice. ...............................................10

      B.    The Rule 11 colloquy does not cure the prejudice. ...............14

      C.    Brown's failure to pursue a nonviable argument on direct appeal is irrelevant. ...........................................................18

      D.    It is irrelevant that Brown acted based on "intuition."........20

III.    NO CREDIBILITY DETERMINATION ALTERS THE RESULT...........................................................................................21

IV.    THE COURT SHOULD VACATE AND REMAND. ......................24

CONCLUSION .....................................................................................26

CERTIFICATE OF COMPLIANCE .....................................................27

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anaya v. Lumpkin,*
  976 F.3d 545 (5th Cir. 2020) ...................................................................5

*Byrd v. Skipper,*
  940 F.3d 248 (6th Cir. 2019) .................................................................11

*Dodson v. Ballard,*
  800 F. App'x 171 (4th Cir. 2020)...........................................................23

*Lee v. United States,*
  582 U.S. 357 (2017) ....................................................................... *passim*

*Marshall v. Lonberger,*
  459 U.S. 422 (1983) ..........................................................................23, 24

*Merzbacher v. Shearin,*
  706 F.3d 356 (4th Cir. 2013) ...................................................................9

*Missouri v. Frye,*
  566 U.S. 134 (2012) .......................................................................2, 7, 8

*Townsend v. Sain,*
  372 U.S. 293 (1963) ...............................................................................23

*United States v. Kearn,*
  90 F.4th 1301 (10th Cir. 2024).......................................................5, 7, 11

*United States v. Knight,*
  981 F.3d 1095 (D.C. Cir. 2020) ...........................................................14

*United States v. Lemaster,*
  403 F.3d 216 (4th Cir. 2005) .................................................................15

*United States v. Mayhew,*
  995 F.3d 171 (4th Cir. 2021) .................................................................16

*United States v. Murillo,*
  927 F.3d 808 (4th Cir. 2019) .................................................................16

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*United States v. Vaulin,*
  132 F.3d 898 (3d Cir. 1997)................................................................5

*Walters v. Martin,*
  18 F.4th 434 (4th Cir. 2021)...........................................................8, 9

**Statutes**

28 U.S.C. § 2254................................................................................23

iii

**INTRODUCTION**

Edwin Brown's attorney told him that he would face the same maximum sentence—10 years—no matter whether he pleaded guilty without a deal or he accepted the Government's plea offer. But the attorney's guidance was off by 80 years, and Brown received a 17.5-year sentence following his open plea. All agree that Brown's counsel performed deficiently when he gave this faulty advice, so the only question is whether Brown was prejudiced by his counsel's mistake. The answer is clear: Brown is prejudiced because his attorney's legal error exposed him to 80 additional years in prison—and ultimately led him to be sentenced to 7.5 more years than would have been possible under the plea deal.

The Government's efforts to resist this conclusion lack merit. It has almost no response to Brown's showing that the district court imposed a contemporaneous-evidence requirement that is not applicable in this setting. Instead, it denies that the district court made that holding. But the court did—repeatedly—and so failed to properly analyze this case.

Recognizing its problems on the law, the Government seeks to refocus this case on alleged factual disputes. But the district court's

1

conclusions about Brown's behavior rest on a further legal error: They rely on inferences about Brown's actions that were infected and driven by his attorney's errant advice. And, contrary to the Government's insistence, the district court never made any credibility finding, much less one that could possibly undermine the straightforward case for prejudice. Accordingly, the Court should conclude that Brown was prejudiced, vacate his sentence, and instruct the government to reoffer its guilty plea.

## ARGUMENT

### I. CONTEMPORANEOUS EVIDENCE IS NOT REQUIRED TO SHOW PREJUDICE FROM A REJECTED GUILTY PLEA.

The district court committed a threshold legal error in demanding that Brown proffer "contemporaneous evidence" that he would have accepted the government's plea offer. As the opening brief explained, there is no such requirement in this setting: A defendant who pleads guilty is presumptively prejudiced from having turned down an earlier, more favorable plea. Brown Br. 20-23, 28-35. That result follows from the Supreme Court's decision in *Missouri v. Frye*, 566 U.S. 134 (2012), and from the decisions of all other courts of appeals to have considered the issue.

2

The Government offers three responses. First, it denies that the district court imposed a contemporaneous-evidence requirement. Second, it contends that a contemporaneous-evidence requirement is consistent with *Lee v. United States*, 582 U.S. 357 (2017). And third, it insists that Brown's arguments would establish an inflexible, categorical rule. Each argument is incorrect.

**A.** The Government's avowal that the district court did not impose a contemporaneous-evidence requirement, *see* Gov't Br. 42-43, cannot be squared with the record. Over and over, the district court and the magistrate judge stressed that contemporaneous evidence is needed to make out a case for prejudice. The magistrate judge expressly held that "[t]o be entitled to relief, there *must be* 'contemporaneous evidence to substantiate a defendant's expressed preferences.'" JA588 (citing *Lee*, 582 U.S. at 369; emphasis added); *see* JA579 (claiming that Brown "has presented no contemporaneous evidence"); JA589 (same). And the district court expressly "agree[d] with the analysis" and "adopt[ed]" the magistrate judge's recommendation, including the finding that "Brown 'presented no contemporaneous evidence to support his claim.'" JA599 (quoting JA589). And then again, the district court stated that courts

3

should "not upset a plea" without "contemporaneous evidence to substantiate a defendant's expressed preferences." JA601 (quoting *Lee*, 582 U.S. at 369). If that holding is erroneous, then the district court's judgment cannot stand.

**B.** The Government also fails to muster a persuasive argument that the contemporaneous-evidence requirement is legally correct. The Government relegates this decisive issue to a single paragraph of its brief. That paragraph cites the Supreme Court's decision in *Lee* for the proposition that courts should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." Gov't Br. 35 (quoting *Lee*, 582 U.S. at 369). The problem for the Government—as Brown extensively explained in his opening brief—is that *Lee* explicitly declined to import its contemporaneous-evidence requirement into this context. Brown Br. 30-35.

As explained, *Lee* concerned a defendant who *accepted* a plea deal based on counsel's faulty advice, only to argue that he would have rejected the deal and rolled the dice at trial had he been properly advised. *Lee*, 582 U.S. at 360. *Lee* expressly refused to say anything about defendants who *rejected* plea deals based on deficient advice, explaining

that "the context of pleas not accepted" warranted a "*different* way to show prejudice." *Id.* at 365 n.1. The courts of appeals have therefore recognized that "*[a]ccepted* and *rejected* pleas arise in different contexts and require distinct tests." *Anaya v. Lumpkin*, 976 F.3d 545, 556 (5th Cir. 2020); *see* Brown Br. 33-35 (collecting additional cases).

The courts of appeals have also explained the sound reasons to distinguish between accepted and rejected pleas. The bottom line is that defendants desire to minimize their time spent in prison. *E.g.*, *United States v. Vaulin*, 132 F.3d 898, 900 (3d Cir. 1997); *see* Brown Br. 29. So the "significant [sentencing] disparity between the plea offer and [the later] sentencing exposure" lends independent credence to a defendant's claim of prejudice in the rejected-plea context. *United States v. Kearn*, 90 F.4th 1301, 1309 (10th Cir. 2024). In contrast, in accepted-plea cases like *Lee*, the defendant must persuade the court that he was genuinely willing to risk trial—and potentially a far longer sentence—for the chance to clear his name. That question turns on defendants' assessment of "their prospects at trial" at the time they decided to plead, which is why the Supreme Court has demanded contemporaneous evidence of their willingness to gamble on a jury of their peers. *Lee*, 582 U.S. at 367;

5

*see id.* ("[A] defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial.").

The Government has no response. It does not explain why this Court should disregard the Supreme Court's admonition that the accepted- and rejected-plea contexts require different legal tests. It advances no reason that this Court should break with the other courts of appeals to have considered the issue. *See* Gov't Br. 40-41, 43 n.5. In short, it says nothing to persuade the Court that the district court's approach was consistent with the law.[1]

**C.** That leaves the Government to attack a strawman. The Government insists that Brown seeks a "categorical," "*per se* rule" that rejected-plea defendants are always prejudiced when they "reject[] an initial offer, accept[] a later offer, and the second offer is worse than the first offer." Gov't Br. 38.

---

[1] Repeatedly, the Government insists that the district court could not have committed legal error because it correctly recited the "two-part *Strickland* test." Gov't Br. 35; *see id.* at 16, 34, 39, 43 n.5. That is a non sequitur: A court citing general legal standards does not mean it correctly applied those standards, including what it means to show prejudice.

That is not correct. Brown's opening brief observed that a defendant "ordinarily" will establish prejudice in those circumstances, as long as there is evidence that he was "amenable to accepting a guilty plea." Brown Br. 20-21 (quoting *Kearn*, 90 F.4th at 1309). But Brown also recognized that the Government can "seek to rebut that showing," and that "the Supreme Court has left open whether 'in some cases defendants must show more than just a guilty plea to a charge or sentence harsher than the original offer.'" *Id.* at 34-35 (quoting *Frye*, 566 U.S. at 150). Thus, this rule is neither categorical nor inflexible: A defendant who was misadvised about a plea deal establishes prejudice if he (1) was amenable to pleading guilty and (2) received a harsher sentence as a result of the deficient advice, unless (3) there is other evidence in the record to undermine the case for prejudice.[2]

Nor is the Government right that "no court has adopted this rule." Gov't Br. 18. In fact, the Supreme Court itself has laid out this test. *Frye* holds that a defendant can "show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's

---

[2] A defendant must also show that the plea would have been accepted by the reviewing court. That question is not contested here. *See* Brown Br. 19 n.1.

7

deficient performance"—that is, this situation—when three conditions are met. 566 U.S. at 147. *First*, the defendant must "demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel"—that is, they must establish amenability to pleading guilty. *Id.* *Second*, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time "—that is, there must be a disparity between the rejected and accepted sentence. *Id.* And *third*, "[i]t may be that in some cases defendants must show more than just a guilty plea to a charge or sentence harsher than the original offer"—that is, there can be other evidence in the record that undermines the case for prejudice. *Id.* at 150. It is therefore unsurprising that the Second, Sixth, Tenth, and D.C. Circuits follow the precise rule that Brown advances. *See* Brown Br. 21-23.

That rule fully explains the various cases that the Government cites. Although the Government accuses Brown of having "ignore[d]" *Walters v. Martin*, 18 F.4th 434 (4th Cir. 2021), Gov't Br. 37, Brown in fact addressed that opinion in his brief, Brown Br. 35 n.2. That case,

8

which arose in the deferential state habeas context, turns on an amenability-to-pleading issue. 18 F.4th at 444. The defendant declined a plea offer in July 2012, so the Court found reason to doubt that he would have accepted a similar plea offer in March 2012. *Id.* at 443. This case, of course, is entirely different: Brown pleaded guilty only days after he rejected the Government's plea deal. JA547.

The Government also points to *Merzbacher v. Shearin*, 706 F.3d 356 (4th Cir. 2013), *see* Gov't Br. 39, but that case likewise turns on amenability-to-pleading issues absent here. As in *Martin*, *Merzbacher* arose in the state habeas context where federal courts can intervene only if a state court manifestly erred. 706 F.3d at 363-65. And *Merzbacher* relied on contemporaneous evidence that the defendant, who proceeded to trial, vociferously maintained his innocence and was not inclined to plead because he "did not want to lose the support of his family and friends" by pleading guilty to raping a minor. *Id.* at 366-67. Again, there is nothing like that here. Brown did not "vociferously maintain his innocence" or steadfastly refuse to plead. *Id.* at 366. To the contrary, Brown was consistently clear that he did *not* want to go to trial in light of the strong evidence against him. *See* Brown Br. 5.

9

\* \* \*

The district court faulted Brown for failing to introduce contemporaneous evidence that he would have accepted the Government's plea offer. But under *Frye* and the decisions applying it, he was not required to do so. All that he was required to show was that he was amenable to pleading guilty (as he plainly was) and that the subsequent plea deal was less favorable (as it clearly was). Because the district court demanded more, its decision cannot stand.

## II.     THE DISTRICT COURT DREW LEGALLY IMPERMISSIBLE INFERENCES FROM THE RECORD.

The Government's remaining arguments seek to show that inferences can be drawn from the record to undercut the straightforward case for prejudice. But the Government's arguments generally repeat the district court's critical legal errors: All of the inferences the court drew were either tainted by Brown's counsel's mistaken advice or otherwise of no legal relevance. *See* Brown Br. 35-49. So there is nothing to counter the analysis set out above.

### A.     Brown's decision about an appeal waiver was infected by his attorney's deficient advice.

The Government's primary argument, echoing the district court, is that Brown prioritized taking a deal that allowed him to appeal his

10

sentence. Gov't Br. 33-34. If that were the case, it would bear on the prejudice inquiry. But it is not correct, because the district court's conclusions on this point are legally flawed.

Brown's supposed statements to his attorney Brett Wentz about his interest in avoiding an appeal waiver have no legal significance because they were "rooted in misinformation gleaned from his counsel's faulty advice." *Byrd v. Skipper*, 940 F.3d 248, 258 (6th Cir. 2019); *see Kearn,* 90 F.4th at 1312. Brown was never properly informed of his options at the time—a plea deal with a 10-year maximum and an appeal waiver, or an open plea with a 90-year maximum and no waiver. Instead, he was told that his sentencing exposure would not vary whether he took the deal or not. JA243-45. He therefore had no ability to indicate "what he would have done if he were properly educated" about his choices. *Kearn,* 90 F.4th at 1311 (quoting *Byrd*, 940 F.3d at 258).

The Government does not appear to contest that Brown's statements to Wentz cannot weigh in the prejudice inquiry. *See* Gov't Br. 33-34. Instead, it argues that the appeal-waiver issue might matter to this case because Brown discussed an appeal waiver with his prior attorney, Frank Harper, "prior to any ineffectiveness." *Id.* at 33.

11

That argument makes no sense. The question is whether Brown was amenable to pleading guilty without an appeal waiver when he rejected the plea deal Wentz negotiated. *See supra* at 2-10. That question cannot be answered by focusing on Brown's interactions with Harper. After all, when negotiating with Harper as his attorney, Brown was not willing to accept a 10-year plea deal. *See* JA477, JA581. So Brown and Harper never discussed the question on which this case turns: whether an appeal waiver altered the calculus between a 90- and 10-year maximum sentence.

But between those negotiations and his negotiations with Wentz, Brown's thinking fundamentally shifted. Brown came to accept that he would face a 10-year exposure. JA582. He accordingly pleaded guilty to offenses that he (mistakenly) thought would subject him to a maximum sentence of 10 years. In other words, he showed himself amenable to a plea that he was not willing to entertain back when Harper was his attorney. Any statements he made to Harper thus have no bearing on whether he was prejudiced by Wentz' deficient advice.

In any event, the record does not support the Government's argument about Brown's statements to Harper. There is no evidence that

12

Brown told Harper that he would not accept a plea that contained an appeal waiver. The only testimony from Harper that the Government cites indicates that Brown was "considering" the effects of an appeal waiver on his case. JA522. It is impossible to conclude from that vague and isolated statement that—even back when he was represented by Harper—Brown would have refused to accept a plea that contained an appeal waiver.

The Government also suggests that "the importance that Brown placed on the appellate waiver is supported by the record" because Brown "had Wentz file a notice of appeal." Gov't Br. 33. This conclusion does not follow. Brown's decision to appeal his 17.5-year sentence says nothing about whether, if properly advised, he would have preferred a 10-year sentence over a longer one regardless of his ability to appeal.

Finally, the Government notes that Brown's letter to his appellate counsel accused the Government of punishing him for exercising his appellate rights. Gov't Br. 33-34. But as Brown already explained, Brown Br. 42 n.4, the letter expresses Brown's concern about the Government's rationale for seeking an upward variance: "The government's motion for variance was d[ue] to the fact that I would not

13

give up my appeal rights and [accept] a plea agreement." JA114. That sentence says nothing to suggest that Brown preferred the possibility of appeal to reducing his sentencing exposure by 80 years.

At bottom, the Government's arguments require the Court to believe something implausible: that Brown would have traded 80 years of sentencing exposure for the chance to appeal his sentence. *See* Brown Br. 40. That choice was never given to Brown, due to his attorney's deficient advice. And the record is devoid of any indication that, had he been properly advised, Brown would have made that irrational choice.

## B.    The Rule 11 colloquy does not cure the prejudice.

Brown's opening brief also demonstrated (at 43-45) that his statements during the Rule 11 colloquy were likewise "infected" by his attorney's bad advice. *United States v. Knight*, 981 F.3d 1095, 1105 (D.C. Cir. 2020). At key times throughout the hearing, Brown turned to his counsel and told the court that he understood the court's statements only after receiving counsel's advice. JA52, JA53. And Brown gave unrebutted testimony that his counsel told him not to "worry" about the court's admonitions. JA513; *see* JA540 (Wentz: "I don't have a specific recollection of that arraignment."). The colloquy thus could not have

14

cured the prejudice Brown experienced from his counsel's deficient performance.

The Government's various responses misconstrue both the law and the facts.

**1.** The Government first cites *United States v. Lemaster*, 403 F.3d 216 (4th Cir. 2005), to note that statements during a plea colloquy are entitled to great weight. Gov't Br. 26. But *Lemaster* expressly carves out the circumstance present in this case. Where there is "admittedly ineffective representation," *Lemaster* observed, "the truth of sworn statements made during a Rule 11 colloquy" cannot be presumed. 403 F.3d at 221-22. Here, where both Brown's counsel and the Government concede that counsel performed deficiently, *Lemaster* is of no moment.

The Government also fails to distinguish *Lee*, which, like *Lemaster*, recognized that "a claim of ineffectiveness of counsel" can "extend[] to advice specifically undermining the judge's warnings themselves." 582 U.S. at 369 n.4. That is exactly what happened here: Wentz told Brown that he would face the same 10-year exposure regardless, and that faulty advice undermined Brown's understanding of the Rule 11 colloquy. The Government has no meaningful answer.

15

The Government also neglects to address *United States v. Murillo*, 927 F.3d 808 (4th Cir. 2019). *See* Brown Br. 46. There, the Court held that "sworn statements must be considered in their context." *Murillo*, 927 F.3d at 817. It therefore observed that, "[w]hen a defendant has been told—multiple times"—that a plea would have certain consequences, statements during a plea colloquy cannot cure the prejudice. *Id.* That precedent applies squarely here. And the argument is further strengthened by the fact that—as the magistrate judge acknowledged— the prejudice to Brown came when he turned down the plea deal "before, not after, he had the benefit of the court's admonitions." *United States v. Mayhew*, 995 F.3d 171, 180 (4th Cir. 2021); *see* Brown Br. 43 n.5.

**2.** When it turns to the facts, the Government begins by claiming that the conversation between Brown and Wentz at the plea colloquy "did not occur." Gov't Br. 29. Yes, it did. The record is clear that Brown twice "confer[red] off the record" with his counsel. JA52, JA53. The first time was after the court asked whether Brown understood "the potential penalties associated with Counts 1 through 4." JA52. The second time was after the court asked if Brown understood the "potential penalties as

16

to Count 5." JA53. The Government cannot wish those conferences away.[3]

Finally, the Government argues that Brown was required to raise his conversations with Wentz during the Rule 11 colloquy as a "separate instance of ineffectiveness." Gov't Br. 30. This contention fundamentally misunderstands the role of the colloquy statements in this case. Brown is not seeking to use the colloquy statements affirmatively to show ineffectiveness—the arguments turn on Wentz's concededly deficient performance when Brown was deciding whether to take a plea deal. The point is that he conferred with Wentz in response to the Government's *defense* that the Rule 11 colloquy cured any prejudice. Accordingly, it is hardly surprising (much less "incredible," Gov't Br. 31) that Brown did not raise the colloquy statements until the Government first argued, in seeking summary judgment, that the Rule 11 colloquy "cure[d] Wentz's deficient advice." JA366.

---

[3] The Government appears to be basing its argument on an observation by the magistrate judge that Brown may have misremembered which of the court's instructions preceded a colloquy with counsel. JA590; *see* Gov't Br. 31. That issue has nothing to do with whether—as the transcript clearly indicates—Brown conferred with Wentz after the court addressed the maximum penalties.

17

### C. Brown's failure to pursue a nonviable argument on direct appeal is irrelevant.

The Government also contends that Brown's "conduct during his appeal further underscores that his claimed prejudice is manufactured" because he did not raise the ineffectiveness issue in that appeal. Gov't Br. 27. The problem with that argument, as Brown previously explained, is that an ineffectiveness claim would not have been cognizable on a direct appeal. Brown Br. 47-49.[4]

The Government does not dispute that Brown could not have succeeded in raising a direct-appeal ineffectiveness claim. But it suggests that Brown should have pursued that argument anyway, perhaps because it is implausible that he—as a *pro se* litigant who made other errors—would have understood this Court's direct-appeal precedents. Gov't Br. 29.

That argument is striking, unsupportable, and contradictory. This Court has never held that a litigant should be required to advance non-

---

[4] In a brief paragraph, the Government links the direct-appeal issue to Brown's decision not to tell the sentencing judge that "counsel had promised a sentence of ten or fewer years." Gov't Br. 27. The Government does not develop this argument, and this Court has never held that an inference may be drawn from a defendant's silence during sentencing.

18

meritorious arguments on direct appeal in order to preserve his claims of prejudice. And it has never endorsed the argument, pressed by the Government here, that a *pro se* litigant should be presumed to lack understanding of the law as to what arguments are viable. And it is unsurprising that the Court has never adopted the Government's approach: The Government's two positions are at odds with each other. *Either* Brown had insufficient legal training to identify his strong appeal arguments *or* he had sufficient legal training to choose to forgo arguments that were not viable. Regardless, no inference can be drawn from his decision not to raise the ineffectiveness issue on direct appeal.

In addition, the Government's discussion of this issue is unfaithful to the record. Contrary to the Government's assertion, Brown did not "raise[] ineffective assistance of counsel" in his direct appeal. Gov't Br. 28. He did not even advance an ineffectiveness theory in the letter he wrote to his appellate attorney that was inadvertently mailed to this Court. All that he said in that letter was that his trial attorney "should have asked for a continuance," noting that fact as part of a longer objection to the Government's motion for a variance. JA114. Words like

19

"ineffective assistance" appear nowhere in that letter, which exclusively dealt with Brown's concern with how his sentence was calculated.

Last, the Government fails to respond to Brown's showing that the direct-appeal argument is unsuccessful on its own terms. The magistrate judge observed—and no party disputes—that Brown became aware of his attorney's error months before he filed his direct appeal. JA592; *see* Brown Br. 48. The Government has no explanation for why it would have been strategic for Brown to forgo that argument at the direct-appeal stage. Without such a theory, the Government's argument collapses.

**D.    It is irrelevant that Brown acted based on "intuition."**

In a short section, the Government advances an argument that it admits was "not discussed much by the district court." Gov't Br. 23. It theorizes that Brown's decision to plead without a deal cannot have been caused by ineffective assistance of counsel because it was ultimately based on his own "intuition" and not any attorney's advice. *Id.*

This argument is unsupported by fact or law. Brown made his choice because he thought—based on counsel's admittedly deficient guidance—that there was no difference in statutory maximums between the options presented to him. The record is utterly devoid of evidence

20

suggesting that, had Brown known differently, he would have made the same decision. And the Government cites no case law suggesting that a defendant cannot be prejudiced by an attorney's incorrect advice simply because he makes his own choices, based on that erroneous advice, about how to proceed.

## III. NO CREDIBILITY DETERMINATION ALTERS THE RESULT.

The Government's final maneuver is to insist that the district court found Brown incredible, and that this alleged credibility finding should alter the disposition of the case. Gov't Br. 2-3, 16, 21, 24-25. But there are two fatal problems with that argument: the district court never made a credibility finding, and it would not matter if it did.

**A.** There is no credibility finding in the district court's opinion or magistrate judge's recommendation. The magistrate judge discussed Brown's testimony from the evidentiary hearing in detail, JA581-83, and could certainly have made an express finding about credibility. But the magistrate judge did not, and the basis of his ultimate recommendation turned not on any credibility finding but on the flawed belief that Brown had "presented no contemporaneous evidence to support his claim that

21

he would have accepted the plea agreement if he knew he faced more than 10 years in prison." JA579; *see supra* at 3-4.

The district court did not make any credibility findings, either. Nor could it. The district court merely "reviewed" the record; it did not hear any evidence or observe any witnesses directly. JA599. It did use the word "credited" in two instances. *See* JA600 ("Judge Numbers credited the testimony of Brown's former counsel …."); JA600-601 ("Judge Numbers also declined to credit Brown's testimony that if Brown had known … that he was exposed to spending more than 10 years in prison, then he would have accepted the government's non-cooperation plea agreement …."). The second instance, which is the only one actually involving Brown himself, is simply another way of saying that the magistrate judge recommended ruling against Brown, based on the judge's flawed understanding of the prejudice requirement. There is nothing in the record at all to suggest that the district court or magistrate judge meant to opine on Brown's credibility as a witness.

Recognizing that the court below did not actually make a credibility finding, the Government urges this Court to infer the district court's thoughts on credibility from its ultimate ruling. Gov't Br. 24. Citing two

state habeas cases, it suggests that district courts can be understood to have ruled on credibility even when they "choose[] not to make express findings of fact as to the defendant's credibility." *Id.* (internal quotation marks omitted).

The Government is badly wrong. This Court and the Supreme Court have inferred credibility findings in only one context: when reviewing state trial courts' decisions under the highly deferential standard set out in the habeas context. *Marshall v. Lonberger*, 459 U.S. 422, 432-33 (1983); *Dodson v. Ballard*, 800 F. App'x 171, 178 (4th Cir. 2020); *see* 28 U.S.C. § 2254. That context demands special rules because federal courts must "assum[e]" that the state courts "applied correct standards of federal law to the facts," and so state courts' holdings presumptively turn on factual issues. *Marshall*, 459 U.S. at 433 (quoting *Townsend v. Sain*, 372 U.S. 293, 314-15 (1963)). There is no analogous rule here, where the Court reviews the district court's legal conclusions de novo.

In any event, the rule of *Marshall* applies only where it is "clear under the applicable federal law that the trial court would have granted the relief sought by the defendant had it believed the defendant's

23

testimony." 459 U.S. at 433. Here, for the reasons described above, the district court's assessment of the case was altered by its incorrect legal conclusion that Brown was required to proffer contemporaneous evidence. *See supra* at 3-4. The district court thus would not have ruled for Brown even if it had believed everything he said, making the Government's credibility-by-inference theory even less plausible.

**B.** In any event, Brown would prevail even if the Government were correct that he did not testify credibly. The district court's errors were legal. The law does not require additional contemporaneous evidence besides Brown's obvious amenability to pleading guilty and resulting guilty plea to more serious charges, *see supra* at 2-10, an error the district court compounded by drawing legally impermissible inferences from the record, *see supra* at 10-21. So even if Brown's testimony had been found incredible and so entirely disregarded (which, again, did not happen here), he would still have established prejudice under *Frye* and the cases applying it.

## IV.    THE COURT SHOULD VACATE AND REMAND.

As Brown outlined in his opening brief, the proper remedy in this case is for the Court to vacate the judgment below and remand with

instructions for the district court to order the Government to reinstate its original plea offer to Brown. Brown Br. 50-51. The Government does not disagree. Gov't Br. 44-45. Indeed, this was the Government's original view as to the proper remedy in response to Brown's motion to vacate. JA179 ("[I]f relief is ultimately warranted, the appropriate remedy would be to vacate [Brown's] convictions, require the government to re-offer [Brown] the rejected plea agreement (pleading to Count Five of the indictment), and then resentencing [Brown] on that sole count, up to a maximum of 120 months.").

Before this Court, the Government now suggests that remand could be appropriate if the Court believes that further legal or factual development is warranted. Gov't Br. 44-45. Brown does not believe that any further factual development is needed to find prejudice: There has already been an evidentiary hearing, which uncovered no evidence that undermines the basic fact that Brown has been prejudiced because he is spending 7.5 additional years of his life in prison. But if the Court sees any lingering factual issues, the appropriate course is to correct the

district court's erroneous legal rulings and allow it to find further facts in the first instance.[5]

## CONCLUSION

This Court should vacate the judgment below and remand with instructions for the district court to order the Government to reinstate its original plea offer to Brown in exchange for his guilty plea.


Respectfully submitted,

/s/ *Joshua Revesz*


| | |
|---|---|
| Anton Metlitsky | David K. Roberts |
| O'MELVENY & MYERS LLP | Joshua Revesz |
| 1301 Avenue of the Americas |    *Appointed Counsel* |
| Suite 1700 | Daniel Lautzenheiser |
| New York, New York 10019 | O'MELVENY & MYERS LLP |
| (212) 326-2000 | 1625 Eye Street, NW |
| | Washington, DC 20006 |
| | (202) 383-5300 |

*Counsel for Appellant*

---

[5] As noted previously, Brown is at or nearing the end of the prison time he would have served had he received a 10-year sentence.  Brown Br. 51 n.6.

26

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,109 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced, 14-point Century Schoolbook font using Microsoft Word.

/s/ *Joshua Revesz*
Joshua Revesz
October 2, 2024